CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED
01/23/2026
LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| ANN BAILEY, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5:25-cv-00132 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| BRIAN BAILEY, *et al.*, | ) By:  Hon. Thomas T. Cullen |
| | )      United States District Judge |
| Defendant. | ) |

This matter is before the court on *pro se* Defendant Brian Bailey's ("Petitioner's")[1] notice of removal. *See* 28 U.S.C. § 1443(1) (allowing defendant in a state civil action to remove the action to the corresponding federal district if defendant "is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States"). (*See* Pet'rs Notice of Removal ("Notice") [ECF No. 1].) Bailey alleges that, over the course of multiple child-custody, support, visitation, and contempt proceedings in the Juvenile & Domestic Relations Court ("J&DR Court") and Circuit Court of Rockingham County, Virginia, he was subjected to varying forms of racial discrimination that perpetuate "racial stereotypes commonly imposed upon Black fathers in family-court settings."[2] (*Id.* ¶¶ 5, 11–23.) He petitions for removal of the state action and, in so doing, "seeks to vindicate rights guaranteed by the Fourteenth Amendment[] . . . along with related federal civil-rights

---

[1] While Bailey was the state-court defendant, he initiated this federal action. Therefore, the court refers to him as "Petitioner" for the purposes of this Memorandum Opinion.

[2] Bailey has noticed for removal "all such custody, visitation, contempt, and related enforcement proceedings concerning his minor child and his parental rights, as presently pending in the J&DR Court and the Circuit Court, to this Court under 28 U.S.C. § 1443(1)." (Notice ¶ 5.) For clarity and brevity, the court collectively refers to these proceedings as the "state-court proceedings."

guarantees that prohibit intentional racial discrimination in state-administered processes[.]" (*Id.* ¶ 8.) Because the court lacks subject-matter jurisdiction over this action, removal is not proper and the court will remand the action back to the J&DR Court of Rockingham County.

At the threshold, this removal is improper because the case below has been closed with a final order. (*See* Rockingham Co. Cir. Ct. Notice, Dec. 15, 2025 ("Cir. Ct. Notice") [ECF No. 5] (rejecting Petitioner's notice of removal upon review conditioned on an apparent pre-filing injunction and stating, "This case has been resolved by final order and remanded back to the Rockingham County Juvenile and Domestic Relations Court."); Rockingham Co. Cir. Ct. Order ¶ 7, Sept. 19, 2025 [ECF No. 6, Attach. 1 at 3271–3277] ("Jurisdiction with respect to all matters of custody and visitation of [the minor child] is hereby REMANDED to the Twenty-Sixth District Juvenile and Domestic Relations District Court at Harrisonburg.").) Insofar as Petitioner seeks to remove the closed circuit-court appeal, his request must be denied. *See, e.g.*, *Gilbert v. Soldan*, No. 22-3265-JWL-JPO, 2022 WL 13960417, at *1 (D. Kan. Oct. 24, 2022) (noting that there is "no authority for the proposition that removal of a closed case is proper" and observing that the removal statute, 28 U.S.C. § 1443, "refers to the removal of *pending* cases").

But even if the underlying state proceedings were still pending, the court lacks subject-matter jurisdiction over the removed claims. Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Here, the *Rooker-Feldman* doctrine strips this court of jurisdiction. The doctrine prohibits federal courts from acting as quasi-appellate bodies for state-court judgments when "cases [are] brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Smalley v. Shapiro & Burson, LLP*, 526 F. App'x 231, 235 (4th Cir. 2013) (explaining that the *Rooker-Feldman* doctrine is jurisdictional, and courts are "obliged to address it before proceeding further in [the] analysis"). The doctrine, however, is one of limited application and applies only when

> (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state-court judgments.

*Exxon Mobil Corp.*, 544 U.S. at 284. Courts place the most emphasis on the second and fourth elements to determine whether the *Rooker-Feldman* doctrine applies and calls for dismissal. *See Woodly v. Vill. Cap. Inv., LLC*, No. 25-2789-BAH, 2025 WL 2578048, at *3 (D. Md. Sep. 5, 2025) (citing *Great W. Mining & Min. Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 166 (3d Cir. 2010)).

The court notes that the first and third *Rooker-Feldman* elements are met. Bailey lost custody and visitation rights in the J&DR court, as well as his appeal of those decisions to the circuit court. He has also been the subject of various contempt findings during those proceedings. Thus, all his purported injuries were effected by state-court orders rendered final before Bailey sought removal. (*See, e.g.*, Cir. Ct. Notice ("This case has been resolved by final

order and remanded back to the Rockingham County [J&DR Court].");  ECF No. 6, Attach. 1 at 769–92; 923–25.) Therefore, to determine if the *Rooker-Feldman* doctrine applies, the court focuses on the second and fourth elements.

In family-law cases, a party "complains of injuries caused by the state-court judgments," *Exxon Mobil Corp.*, 544 U.S. at 284, if the "purported injury . . . was effectuated only by the state's eventual custody orders," *Reichert v. Hornbeck*, No. 1:24-cv-01865-JMC, 2025 WL 487337, at 7 (D. Md. Feb. 13, 2025) (hereinafter *Reichert I*) (finding the second factor of the *Exxon Mobil* test counseled in favor of *Rooker-Feldman* application because petitioner complained of defendant's false statements during custody proceedings and he would not have been injured by those statements "but for [their] impact on the custody proceedings"). In other words, the party's claims must be "separate and distinct from any final state court judgment," even though they may be related. *Reichert v. Hornbeck*, No. 1:24-cv-01865-JMC, 2025 WL 2062199, at *6 (D. Md. July 23, 2025) (hereinafter *Reichert II*).

As to the fourth factor, a petitioner may not request that a federal court review the merits of a state court decision. *See Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997) (explaining that the *Rooker-Feldman* "doctrine reinforces the important principle that review of state court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeals"). Accordingly, if a party's "success necessarily depends on a 'determination that the state court wrongly decided the issues before it,'" the federal court lacks jurisdiction. *Reichert I*, 2025 WL 487337, at *8 (quoting *Plyler v. Moore*, 129 F.3d 728, 731–32 (4th Cir. 1997)) ("Plaintiff does not seek reversal of the state court custody or protective orders . . . . However, because his injury was effectuated

by the state court judgments, . . . his claim . . . would require this Court to weigh whether those judgments were erroneous"); *see also Reichert II*, 2025 WL 2062199, at *6–7 (applying *Rooker-Feldman* doctrine to claims that required district court "to weigh whether the protective orders were erroneously entered by the state court").

Bailey takes issue with the state courts' various decisions and alleges that he has subjected to unjust contempt proceedings. (*See, e.g.*, Notice ¶¶ 9, 11, 16, 17–21.) Notably, he does not seek review of those charges or the attendant contempt findings; to the contrary, he claims that he would not have suffered injury in state court "but for [the resulting] impact on the custody proceedings." *Reichert I*, 2025 WL 487337, at *7. (*See* Notice ¶¶ 25–29 (complaining of "the courts' repeated reliance on dismissed accusations" that have resulted in him being "permanently stigmatized or punished based on non-sustained charges").) Therefore, Bailey's alleged injuries were "effectuated" by the state-court decision making and judgments, counseling in favor of the application of the *Rooker-Feldman* doctrine. *Id.*

Moreover, Bailey's notice of removal requires this court to review the merits of the state-court judgment.[3] To be sure, Bailey "acknowledges that federal courts often exercise caution where state family-law matters are concerned" and caveats that he only "seeks to

---

[3] Insofar as Bailey asks this court to "stay all ongoing contempt, custody, visitation, and related enforcement proceedings in the J&DR Court and the Rockingham County Circuit Court," the court declines to do so. (Notice ¶ 37.) First, the Anti-Injunction Act prohibits federal courts from "grant[ing] an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate those judgments." 28 U.S.C. § 2283. Those exceptions do not apply to this case. *See Woodly*, 2025 WL 2578048, at *4. Even if the court were authorized to review the proceedings, the court would abstain from involving itself in the enforcement actions of the Commonwealth. *See Younger v. Harris*, 401 U.S. 37, 91 (1971); *Cantor v. Cohen*, 442 F.3d 196, 202 (4th Cir. 2006) ("[F]ederal courts are courts of limited jurisdiction and generally abstain from hearing child custody matters.").

vindicate" his federal rights.[4] (Notice ¶¶ 8, 33.) But the core of this action concerns the state court's decision-making process, which allegedly involved the court's undue reliance on the false or dismissed charges in the determination of his parental fitness and rejection of his filings (which the presiding judge suspected were drafted with the aid of artificial intelligence). (*Id.* ¶¶ 17–23; ECF No. 6, Attach. 1 at 922–24.) Bailey also claims that the state court's reasoning was erroneous and asks this court to step in and reach a different decision. *See Plyler*, 129 F.3d at 732; *Reichert II*, 2025 WL 2062199, at \*6; *see also J.B. v. County of Howard in Maryland*, No. ELH-14-3752, 2015 WL 306705, at \*10 (D. Md. Jan. 21, 2015) (rejecting federal plaintiff's filing on *Rooker-Feldman* grounds because "plaintiff [was] a disgruntled litigant who [sought] to relitigate her State divorce and custody case in this forum, repackaged as claims of constitutional violations"). This is precisely what the *Rooker-Feldman* doctrine prohibits. Accordingly, the court does not have jurisdiction over Bailey's claims.[5]

---

[4] Bailey also asserts that the court has jurisdiction under 28 U.S.C. § 1983, ascribing his state-court loss to the racial prejudice of the parties (*e.g.*, Judge Ritchie, the guardian *ad litem*, and the mother). (*See* Notice ¶ 31.) These allegations, however, are purely speculative. Bailey has not provided any factual support that the J&DR Court's decisions were based, in whole or in part, on his race. Without plausibly establishing a violation of his constitutional or statutory civil rights, the court cannot invoke its federal-question jurisdiction.

[5] Even if the court had jurisdiction over Bailey's claim, it would otherwise deny the notice of removal. A § 1443(1) petition

> must satisfy a two-pronged test. First, it must appear that the right allegedly denied . . . arises under a federal law "providing for specific civil rights stated in terms of racial equality." Claims that . . . rights [were violated] under constitutional or statutory provisions of general applicability or under statutes not protecting against racial discrimination[] will not suffice.
> . . .
> Second, it must appear . . . that the removal petitioner is "denied or cannot enforce" the specified federal rights [in state court].

*Johnson v. Mississippi*, 421 U.S. 213, 219 (1975) (quoting *Georgia v. Rachel*, 384 U.S. 780, 792 (1966)). Bailey does not satisfy either prong. First, he generally alleges that the state court violated his rights guaranteed by the Fourteenth Amendment and "related federal civil-rights guarantees." (Notice ¶ 8.) Second, Bailey speculates that all "state courts have adopted and internalized a narrative about him . . . that is aligned with racial

Based on the foregoing, the court will order that the notice of removal be denied and will remand this action back to the J&DR Court of Rockingham County.

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 23rd day of January, 2026.

>  /s/ *Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE

---

stereotypes[.]" (*Id.* ¶ 25.) Without factual support that every court in the Commonwealth, including the Court of Appeals and Supreme Court of Virginia, is biased against him, Bailey cannot establish that he is unable to enforce his rights in state court through the tried-and-true process of an appeal.

- 7 -